J. M. Harrell v. Commissioner.
Harrell v. Commissioner
Docket No. 2782.
United States Tax Court
1944 Tax Ct. Memo LEXIS 251; 3 T.C.M. (CCH) 635; T.C.M. (RIA) 44172; May 17, 1944
*251 Pursuant to advice and explanation of the 3-year statutory limitation, given to them by their tax consultant, all of the stockholders of Hazen, Trent & Harrell Co. adopted a plan to liquidate immediately in order to obtain the advantages of the provisions of section 115 (c) of the Internal Revenue Code. Due to illness and other circumstances, the company's secretary did not record the stockholders' action. Complete liquidation was accomplished in less than two years. Held, upon the facts, that a bona fide plan of liquidation was adopted under which the transfer of the property, thereunder was to be completed within the 3-year period specified in the plan, as provided in such statute. George E. H. Goodner, Esq., and B. I. Dahlberg, C.P.A., 813 Burwell Bldg., Knoxville, Tenn., for the petitioner. F. L. Van Haaften, Esq., and Charles P. Bagley, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies of $166.50 and $451.72 in the petitioner's income taxes for the years 1939 and 1940, respectively. The single issue is whether or not certain distributions received by the petitioner in the taxable years, in liquidation of *252 Hazen, Trent & Harrell Company, were on complete liquidation of that corporation pursuant to a plan as provided in section 115 (c) of the Internal Revenue Code, and hence the profit thereon was taxable to the extent of 50 per cent. Findings of Fact The petitioner is an individual residing in Knoxville, Tennessee. He filed his income tax returns for the years 1939 and 1940 with the collector of internal revenue for the district of Tennessee. During 1939 and 1940 the petitioner was a stockholder of Hazen, Trent & Harrell Company, hereinafter called the company, a corporation engaged in the wholesale grocery business in Knoxville, Tennessee. His latest purchase of the stock of that company was made in 1927, and he continued to hold all of his stock thereafter until the dissolution and liquidation of the corporation. The other stockholders of the company were the estate of R. S. Hazen, represented by J. H. Pettway, trustee; W. F. Trent, E. W. Kennedy, J. H. Pettway and L. E. Bonner. All of the company's stockholders were also its directors. Prior to September 15, 1939 the company received an offer from Pay Cash Grocery Company and Hackney Grocery Company to purchase all of its merchandise. *253 The purchasers desired immediate delivery. About September 1, 1939 all of the company's stockholders met in the office of B. I. Dahlberg, the company's accountant and tax consultant, to secure his advice as to the proper procedure from the tax viewpoint. Dahlberg told them that they would have to have a stockholders' meeting and must liquidate within three years in order to take advantage of the provision of section 115 (c) of the Internal Revenue Code. Pursuant to that advice, and to accomplish a saving of 50 per cent of the tax, the stockholders forthwith held a meeting in Dahlberg's office, and upon motion it was ordered that the company be liquidated immediately. The meeting was duly and formally held and the resolution was formally passed. Kennedy was the secretary of the company, but Pettway had charge of the company's books. No minutes of the meeting were written up by Kennedy, who was old and sick at the time. Pettway was stone-deaf. The following record appears in the minute book of the company: "Knoxville, Tenn., Sept. 15, 1939 rectors to liquidate the business and the directors having received a favorable offer of purchase of the merchandise for immediate acceptance *254 now waive written notice of stockholders meeting a week in advance so that a meeting may be held without delay to authorize the sale of the merchandise by the directors as indicated. "Said offer being made by H. T. Hackney Co. and Pay Cash Grocery Co., jointly, to purchase all our merchandise at cost or market, less 1 1/2% cash discount." "Signed, W. F. Trent, J. M. Harrell, J. H. Pettway, E. W. Kennedy, L. E. Bonner, John B. Trent, M. Buck Hazen, Evelyn M. Hazen" The board of directors held a meeting on September 19, 1939. The minutes of that meeting recite that "it was unanimously agreed to begin liquidation at the first favorable opportunity afforded by the war situation and local condition." The officers of the company were given full power to sell the merchandise and real estate and to take other appropriate action to collect the accounts and notes receivable and to make distribution to the stockholders. Thereupon the company disposed of its merchandise and other assets as rapidly as possible. Liquidating dividends were authorized on December 8, 1939 and April 29, 1940. On June 19, 1940 the company conveyed its remaining assets to trustees for the stockholders. The company's *255 charter was surrendered in June 1940. Final distributions were made by the trustees by checks issued January 9, 1941, pursuant to entries made on December 31, 1940. The respondent determined that the petitioner received $36,056.55 in 1939 and $8,060 in 1940 as liquidating dividends from the company and that the basis of his stock was $30,326.35. These figures are not controverted. The respondent taxed the gains realized from such distributions as short-term capital gains, and therefore computed the tax on their full amount. The distributions received by the petitioner from the company in 1939 and 1940 were a part of the complete liquidation of that corporation and were made as a part of the complete cancellation of all its stock in accordance with a bona fide plan of liquidation under which the company's property was to be transferred within three years from the close of the taxable year during which the first of the series of such distributions was made. Opinion VAN FOSSAN, Judge: The issue before us is one of fact. The precise question is whether or not there may be spelled out from the record a bona fide plant of liquidation to be completed within three years, such as required *256 by section 115 (c) of the Internal Revenue Code. [1]
*257 Without repeating the facts succinctly stated in our findings, we find that the stockholders of the corporation, having an offer from a prospective purchaser of its assets, formally resolved to liquidate "immediately". Interpreted in the background of the advice given by Dahlberg and from the testimony of the witnesses, we conclude that immediately", as so used, meant within a few months and at the latest well within the three years permitted by the statute. Though written evidence of action is usual, if the corporate action be established as a fact, the absence of a formal record is not necessarily fatal. The law does not specify that the plan must be in writing. Cf. section 26 (c), Revenue Act of 1936, respecting contracts restricting payment of dividends. Properly to appraise the situation which is here presented, it is necessary to view the whole picture in all of its aspects and to realize that we are dealing with a corporation in which the niceties of precise action were sometimes overlooked. Informality was the rule. Basing our conclusion in part on our own observation of the several witnesses, we accept the explanation of the absence of a formal minute of the meeting as truthful *258 and adequate. This lack was due to the fact that the secretary was old and ill, while the actual custodian of the records was stone-deaf, a fact well demonstrated when his testimony could be elicited only by written questions. The subsequent actions of the stockholders and directors were consistent with their purpose and intention to complete liquidation within the statutory period. They proceeded with the sale of the assets; liquidating dividends were paid on December 8, 1939 and April 29, 1940; the remaining assets were conveyed to trustees on June 19, 1940; the company's charter was surrendered in June 1940; and a final distribution was made by the trustees to the stockholders on January 9, 1941 but as of December 31, 1940. The respondent cites and relies on Amory L. Haskell, 46 B.T.A. 164, affirmed 133 Fed. (2d) 202, where it was held that no plan of complete liquidation within two years was proven. The cited case is clearly distinguishable. In the instant case a plan for complete liquidation within three years is proven. We conclude that the company complied with the requirements of the statute in all essential particulars *259 and that, therefore, petitioner's profit is taxable as long-term capital gain at 50 per cent thereof pursuant to section 117 (b) of the Internal Revenue Code. Decision will be entered under Rule 50. Footnotes
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * * * *
(c) Distributions in liquidation. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain, except in the case of amounts distributed in complete liquidation. For the purpose of the proceding sentence, "complete liquidation" includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding, from the close of the taxable year during which is made the first of the series of distributions under the plan, (1) three years, if the first of such series of distributions is made in a taxable year beginning after December 31, 1937, or (2) two years, if the first of such series of distributions was made in a taxable year beginning before January 1, 1938. In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. If any distribution in complete liquidation (including any one of a series of distributions made by the corporation in complete cancellation or redemption of all its stock) is made by a foreign corporation which with respect to any taxable year beginning on or before, and ending after, August 26, 1937, was a foreign personal holding company, and with respect to which a United States group (as defined in section 331 (a) (2)) existed after August 26, 1937, and before January 1, 1938, then, despite the foregoing provisions of this subsection, the gain recognized resulting from such distribution shall be considered as a short-term capital gain - (1) Unless such liquidation is completed before July 1, 1938; or (2) Unless (if it is established to the satisfaction of the Commissioner by evidence submitted before July 1, 1938, that due to the laws of the foreign country in which such corporation is incorporated, or for other reason, it is or will be impossible to complete the liquidation of such company before such date) the liquidation is completed on or before such date as the Commissioner may find reasonable, but not later than December 31, 1938.↩