W. T. Temple v. Commissioner.
W. Temple v. Commissioner
Docket No. 1327.
United States Tax Court
1946 Tax Ct. Memo LEXIS 91; 5 T.C.M. (CCH) 763; T.C.M. (RIA) 46210; August 30, 1946
*91 Under the facts, held, a distribution on January 16, 1940 was not one in complete liquidation under section 115 (c), I.R.C., prior to the 1942 amendment, and the gain realized therefrom is taxable as ordinary gain. Albert W. Taber, Esq., and Charles L. Claunch, Esq., Chattanooga Bank Bldg., Chattanooga, Tenn., for the petitioner. S. Earl Heilman, Esq., and Frank M. Thompson, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: This case involves an income tax deficiency for the year 1940 in the amount of $5,765.92 as determined by respondent. The sole question is whether the sum of $22,750 received by the petitioner in January, 1940 from Mountain City Knitting Mills, a corporation, in exchange for 91 shares of stock in that corporation owned by petitioner constituted a distribution in partial liquidation as determined by respondent or was a distribution in connection with the complete liquidation of the corporation as contended by petitioner. The case was submitted on oral testimony and exhibits from which we make the following Findings of Fact Petitioner is an individual residing at No. 901 Vine Street, Chattanooga, Tennessee. His income tax return was filed with the collector of internal revenue for the District of Florida. Mountain City Knitting Mills (hereinafter referred to as the corporation) was a Tennessee corporation *93 organized in 1917 and was engaged in the manufacture of hosiery. Its place of business was Chattanooga, Tennessee. During the years 1917 and 1922, petitioner acquired 91 shares of common stock of the corporation at a cost of $7,000. On January 16, 1940 and for some time prior thereto, petitioner was president of the corporation, E. A. Magill treasurer and general manager, and William L. Magill, brother of E. A. Magill, secretary. These same parties and Bessie Magill and Sadie Magill, sisters of E. A. Magill and William L. Magill, constituted its board of directors. The sisters were not active as directors. For several years the stock of the corporation was owned as follows: petitioner - 91 shares; E. A. Magill - 201 shares; and William L. Magill - 43 shares, making a total of 335 shares outstanding on January 16, 1940. The corporation has held 65 other shares since about 1928 as treasury stock. Petitioner was never active in the business. He had no office or desk at the mill. He had other bsiness interests and spent much of his time in Florida looking after his affairs there. E. A. Magill and William L. Magill, who were, with the exception of petitioner, the only stockholders, officers *94 and active directors of the corporation, decided in December 1939, that it was advisable to liquidate the corporation for the reasons that the operations for the past few years had not been profitable, William L. Magill's health had been bad, help was getting scarce, E. A. Magill "was getting older", the machinery was becoming obsolete, and to meet competition new machinery would be required and the prospects for successful continued operation did not justify the additional investment in the plant. The corporation had contracts for goods to be manufactured, putstanding contracts for the purchase of raw material, and real estate and machinery to dispose of. It was not known how long liquidation would take but it was the intention of the Magills to liquidate the corporation within such relatively short period of time as would be consistent with favorable market conditions and other circumstances. It was realized "it would take quite a little while to liquidate" unless sold as a going concern. E. A. Magill asked petitioner to meet him and his brother at the Read House in Chattanooga January 16, 1940 where they met and had lunch together. At that meeting E. A. Magill told petitioner *95 of their intention to liquidate the corporation, and their reasons for so doing. After going over the affairs of the corporation it was estimated the stock was reasonably worth $250 per share and the petitioner agreed to accept that amount for his 91 shares. The corporation then acquired petitioner's stock for $22,750. It paid $7,750 of this amount by check of that date and gave its 90-day note for $15,000 which it paid on April 12, 1940. The certificates were assigned to "E. A. Magill Treasurer" to be held as treasury stock until retired. The certificates were marked "cancelled May 28, 1940." Petitioner handled the disposition of his 91 shares without legal advice. At the annual meeting of the corporation on February 20, 1940 new officers and directors of the corporation were elected as follows: Directors - E. A. Magill, William L. Magill, (Miss) Sadie Magill - officers, E. A. Magill, president, treasurer and general manager; William L. Magill, vice-president and secretary. At that meeting the minutes show a resolution was adopted which contained the following language: It was moved, seconded and unanimously carried that the action of the Treasurer be approved in purchasing *96 the stock of Walter T. Temple for the company and that this stock be held as Treasury stock. At the directors' annual meeting held on the same day, the directors by resolution also approved the action of the treasurer in purchasing petitioner's stock for the company, and that it be held as treasury stock. Petitioner had no contact with the corporation after he surrendered his stock on January 16, 1940 and did not know that it had been treated as treasury stock. The matter of liquidation was not discussed with anyone outside the board of directors until sometime in April or May, 1940. Prior to May 27, 1940, E. A. Magill discussed it with Albert W. Taber, attorney for the corporation and sought to learn the proper procedure in liquidating the business. He asked Taber to suggest items of business to be transacted at a forthcoming meeting of the stockholders and directors relating to the liquidation. Taber was not informed of the luncheon meeting at the Read House on January 16, 1940 nor of the acquisition of petitioner's stock by the company. After securing the pertinent facts Taber wrote out a proposed form of minutes, enjoining upon E. A. Magill to faithfully follow out the business *97 to be transacted as shown by the minutes prepared by him and if the business transacted deviated from the prepared minutes to come back and have them corrected. The business transacted at the May 27, 1940 meeting was in accordance with the minutes prepared by Taber, from which we make the following summary of pertinent facts: Present were: E. A. Magill holding 201 shares, and W. L. Magill holding 43 shares, representing all the outstanding stock of the company. The president stated that the purpose of the meeting was to consider and take action upon a plan for the complete liquidation of the company and the reasons therefor. The following resolution was adopted: WHEREAS, it is considered advisable that Mountain City Knitting Mills go into complete liquidation and that its assets be distributed to its shareholders; RESOLVED, that Mountain City Knitting Mills be liquidated pursuant to the authority contained in this resolution; That said corporation be liquidated by a series of distributions to the shareholders in complete cancellation or redemption of all its stock; the first of such series of distributions to be made in the year 1940 at such time as the Liquidating Committee, *98 hereinafter appointed, shall elect; that the transfer and distribution of all the property of the corporation under such liquidation shall be completed on or before December 31, 1943; That the President of the company be and is hereby approved as a committee of one to effect such liquidation, and he shall have, in his sole discretion, the following authority: (Here is set forth in detail his authority and method of procedure in carrying out the liquidation and making distributions in liquidation). FURTHER RESOLVED, that the corporate officers, employees, or agents, shall continue to have their usual powers and authorities in connection with such ordinary business operations of the company as may be continued during the period of liquidation. FURTHER RESOLVED, that all shareholders shall surrender all their stock forthwith hereafter to the Secretary of the company for endorsement thereon that this company is in liquidation, and after said endorsement shall have been made said certificates shall be returned to the holders thereof, to be held by them until complete liquidation shall have been effected, when they shall be surrendered to the company for cancellation; but said shareholders *99 or their assigns shall be entitled to vote said stock in any corporate meetings until the complete liquidation shall have been effected and the charter of the company surrendered. FURTHER RESOLVED, that it is the desire of the shareholders to surrender the charter of Mountain City Knitting Mills after the aforesaid liquidation shall have been completed and the President and Secretary of the corporation are hereby empowered to execute and file with the Secretary of State of the State of Tennessee a certificate showing the adoption of this Resolution and to take all actions necessary or convenient to effect the surrender of the said charter and dissolve the corporation after the said liquidation shall have been completed. The minutes further show that W. L. Magill called attention to the fact that the company held as treasury stock 156 shares of its own stock and on motion it was ordered that this treasury stock be cancelled and that the necessary book entries be made to reflect the resulting reduction in the capital stock account. The resolution for liquidation of the corporation was adopted at the directors' meeting held on the same date, and the action of the stockholders in *100 ordering cancellation of the treasury stock was ratified and confirmed. On June 14, 1940 the corporation filed with the Commissioner Form 966, "Return of Information under Section 148 (d) of the Revenue Act of 1938 to be Filed by Corporations within Thirty Days after Adoption of Resolution or Plan of Distribution or Liquidation." This return, accompanied by a copy of the resolution adopted by the corporation's stockholders and board of directors on May 27, 1940 stated that "May 27, 1940," was the "Date of adoption of resolution or plan of distribution or liquidation." On January 21, 1941, the corporation filed with the Bureau of Internal Revenue form 1096, an Annual Information Return, Summary of Distributions in Liquidation of $800 or more." Attached thereto were two copies of form 1099 L, an "Information Return, Distributions in Liquidation for Calendar Year 1940," made only for E. A. Magill and William L. Magill, stockholders, respectively. On March 4, 1941 the corporation filed a final income, declared value excess-profits and defense tax return for the year 1940. An attached schedule headed, "Distributions in Complete Liquidation" shows that all such distributions were made *101 to William L. Magill and E. A. Magill. The corporation retired all of its capital stock and made complete liquidation of its assets in the year 1940 in accordance with the plan formulated and adopted on May 27, 1940. Liquidating dividends in cash and property were made at various times from August 6, 1940 to December 31, 1940 to William L. Magill and E. A. Magill. On January 16, 1940 petitioner received $22,750 from the corporation as a distribution in partial liquidation. Opinion The parties are in agreement that the receipt of the $22,750 by petitioner from Mountain City Knitting Mills in January, 1940 in exchange for the 91 shares of stock held by petitioner in that corporation was a distribution in liquidation under section 115 (c), I.R.C., as it existed prior to the 1942 amendment. The applicable section is set forth in the margin. [1]
*102 Their difference is only as to whether the distribution in question was one in partial liquidation or one in complete liquidation under the section. Respondent determined it was in partial liquidation. Petitioner contends it was one of a series of distributions made in complete liquidation of the corporation. If petitioner's contention prevails, the gain realized is by the terms of the statute subject to the limitations contained in section 117, I.R.C., and taxable as a long-term capital gain. Under respondent's determination the gain realized is taxable as a shortterm capital gain. The burden of proof is on petitioner to show the distribution in question was one of a series of distributions made by a corporation in complete cancellation or redemption of all its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under liquidation was to be completed within a time specified in the plan. A distribution cannot be said to be "in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan" if no plan of *103 liquidation existed at the time of distribution. See Amory L. Haskell, 46 B.T.A. 164, aff'd., per curiam 133 Fed. (2d) 202. The first and only recorded minutes containing a plan of liquidation was that of the meeting of the stockholders and directors held on May 27, 1940 some four months after the distribution here in question was made. The minutes of that meeting show the adoption of a resolution containing a plan of complete liquidation. This resolution, however, was not in effect at the time the distribution was made, and is not retroactive. Amory L. Haskell, supra. Petitioner contends that what was said and done at the informal luncheon meeting at the Read House in Chattanooga on January 16, 1940, followed by completion of the liquidation in 1940 constituted a plan of liquidation as of that date, which satisfied the statutory requirements, making the distribution one in complete liquidation. Assuming that the informal meeting of petitioner and the two Magills on January 16, 1940 was a corporate meeting and that what was done there could be shown other than by recorded minutes, the evidence and circumstances of record fall far short of *104 proof that a plan of liquidation was adopted or agreed upon at that meeting or that the distribution in question was made in accordance with any plan of complete liquidation. Petitioner, E. A. Magill and W. L. Magill were the only ones present at that meeting. W. L. Magill did not testify. Petitioner's testimony is of but little value on the crucial point. E. A. Magill, who was most active in the management of the business and affairs generally of the corporation, testified that as early as December, 1939, he and his brother had decided to liquidate the corporation. He informed petitioner at that meeting of the intention of himself and his brother to liquidate the corporation and petitioner said whatever they decided to do was agreeable with him. His testimony is silent as to the steps to be taken or the manner or method of carrying out their declared intention. He testified they wanted to liquidate as promptly as possible, and to be out in two years or sooner if they could. Such a declaration of intention by the Magills and petitioner's acquiescence therein did not constitute a corporate plan of liquidation. A mere intention to do a thing does not constitute performance. Funk and *105 Wagnalls Standard Dictionary of the English language defines plan as "a methodical arrangement of the various means or successive steps believed to be necessary or conductive to the attainment of some object; a formulated scheme for reaching some result." We think Congress, in enacting Section 115 (c) had in view the common accepted meaning and use of the word, "plan". Considering the testimony of the witnesses most favorable to the petitioner as to what was said and done at the January 16, 1940 meeting it amounts to nothing more than a declared intention to liquidate as promptly as possible, and does not show the formation or adoption of a plan of liquidation at that time. The most that can be said is that it was a preliminary step to the formulation and adoption of a plan. The acts and conduct of the officers, stockholders and directors of the corporation subsequent to January 16, 1940 clearly indicate that they did not consider the luncheon meeting at the Read House a corporate meeting at which a bona fide plan of liquidation was formulated or adopted. Here it is conceded there was no corporate record of minutes of the January 16, 1940 meeting and that the first recorded resolution *106 containing a plan of liquidation was that adopted at the May 27, 1940 meeting some four months after the distribution in question. Petitioner's stock was transferred to the treasurer of the corporation to be held as treasury stock. It was so held and was not cancelled until after the liquidating resolution of May 27, 1940, was adopted. The annual meeting of the corporation was held on February 20, 1940. The minutes of that meeting were recorded. They show approval of the action of the treasurer in purchasing petitioner's stock for the company and that it be held as treasury stock but contains no reference to liquidation. The resolution setting out the plan of liquidation adopted at the meeting of May 27, 1940, provides that the corporation "be liquidated pursuant to the authority contained in this resolution." That it be liquidated by a series of distributions in complete cancellation or redemption of all its stock, the first of such series of distribution to be made in the year 1940 "at such time as the liquidating committee, hereinafter appointed, shall elect." The president was appointed as a committee of one to effect the liquidation, and his powers as liquidating agent were set *107 forth in detail. The stockholders were required to surrender their stock to the secretary for endorsement that the company was in liquidation, return the stock to the holder to be held until liquidation was completed, and then surrendered for cancellation. Some time in May and prior to May 27, 1940, Magill discussed the matter with his attorney, told him they had decided to liquidate, asked him what the law was as to liquidation of corporations, wanted to learn from him the proper procedure in liquidating the business, and asked him to suggest items of business to be transacted at a forth-coming meeting of the stockholders. He had the attorney prepare the minutes containing the formal plan of liquidation for adoption at the May 27, 1940 meeting. Magill was admonished to follow faithfully the business to be transacted as shown by the minutes and that if there was any deviation from the minutes to come back and they would be corrected to agree with the facts. Magill did not advise the attorney of the January 16, 1940 meeting or of any prior distribution by the corporation. Manifestly the January 1940 distribution was considered a separate and unrelated transaction when Magill sought *108 the advice of counsel in May, 1940. A return required by section 148 (d) of the Revenue Act of 1938 duly subscribed and sworn to by E. A. Magill as president, and W. L. Magill as secretary of the corporation, was filed with the Commissioner on June 15, 1940 in which the date of the adoption of the plan of liquidation was stated to be May 27, 1940 and attached thereto was a certified copy of the resolution that day adopted as the plan of liquidation. The information return of distributions in liquidation for the calendar year 1940 with respect to each shareholder to whom such distribution was made, subscribed and sworn to by E. A. Magill, omits the petitioner and lists only E. A. Magill and W. L. Magill as having received distributions in liquidation for that year. The corporate return filed March 4, 1941 for the year 1940 lists the distributions in complete liquidation made during the year 1940 as being made to E. A. Magill and W. L. Magill. All these returns were subscribed and sworn to by an officer of the company, and none of them relates the plan of liquidation back to the January 16, 1940 luncheon meeting and distribution. Petitioner contends and argues that the indefiniteness *109 of his witnesses or their failure to specify a time limit for completion of the liquidation at the January 16, 1940 meeting is not fatal, since it was decided to liquidate as promptly as possible and was followed by complete liquidation within the year. In the authorities cited by petitioner as to the time element in the plan of liquidation, a plan of liquidation had been agreed upon at the time of the distribution. Here no plan was in effect at the time of the distribution to petitioner. Taking into consideration all the facts and circumstances of record we are of the opinion the distribution to petitioner on January 16, 1940 was not one of a series in complete liquidation and that the Commissioner's determination must stand approved. Decision will be entered for the respondent. Footnotes
1. Section 115 (c) I.R.C.: (c) Distributions in Liquidation. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117↩, the gain so recognized shall be considered as a short-term capital gain, except in the case of amounts distributed in complete liquidation. For the purpose of the preceding sentence, "complete liquidation" includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding, from the close of the taxable year during which is made the first of the series of distributions under the plan, (1) three years, if the first of such series of distributions is made in a taxable year beginning after December 31, 1937, or (2) two years, if the first of such series of distributions was made in a taxable year beginning before January 1, 1938. * * *